**Teri TUCKER, Plaintiff,**

v.

**AMERICAN INTERNATIONAL GROUP, INC.; National Union Fire Insurance Company of Pittsburgh, PA., A Subsidiary of American International Group, Inc., Defendants.**

No. 3:09–CV–1499 (CSH).

United States District Court,
D. Connecticut.

Aug. 4, 2010.

Jeffrey S. Bagnell, Lucas Bagnell LLC, Westport, CT, for Plaintiff.

Dennis O. Brown, Edwards Angell Palmer & Dodge, Hartford, CT, John D.

Hughes, Edwards Angell Palmer & Dodge LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

HAIGHT, Senior District Judge:

Plaintiff Teri Tucker ("plaintiff" or "Tucker") seeks to recover damages from her former employer's insurers, defendants American International Group, Inc. ("AIG") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), arising from her unlawful discharge in 2003. Specifically, she seeks to collect from defendants a $4 million judgment in plaintiff's favor entered against her employer, Journal Register East, by District Judge Stefan R. Underhill following a jury trial in the Bridgeport Division of this Court. *Tucker v. Journal Register East,* Doc. # 3:06–CV–307 (SRU) (herein "Tucker I").[1] Pending before this Court is defendants' motion to transfer and/or reassign the present case to Judge Underhill. Doc. # 17. Defendants bring their motion pursuant to Local Rule of Civil Procedure 40(b), this District's version of the "first-to-file" rule, and for a change of venue pursuant to 28 U.S.C. § 1404(b) from the New Haven Division to the Bridgeport Division.

## I. FACTS

### A. Tucker I

On March 1, 2006, plaintiff commenced an action against her former employer, *The New Haven Register*,[2] for unlawful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60, *et seq.;* and Connecticut's "Free Speech Law," Conn. Gen.Stat. § 31–51q ("discharge of employee on account of employee's exercise of certain constitutional rights"). Tucker I, Doc. # 1. More specifically, Tucker contended that she was terminated for opposing sexually harassing behavior by a subordinate employee and for refusing to testify falsely in her employer's defense to a sexual harassment complaint regarding the subordinate's behavior.[3]

Plaintiff's case in Tucker I proceeded to a jury trial in July 2008. On July 23, 2008, the jury returned a verdict in her favor on all counts in the total amount of $4 million: $1 million in compensatory damages and $3 million in punitive damages. Tucker I, Doc. # 69. The jury also found that Tucker was entitled to economic damages in an amount to be determined by the court. *Id.* On July 29, 2008, Judge Underhill entered judgment on the verdict in the amount of $4 million. *Id.,* Doc. # 73.

Post-trial, Tucker sought a prejudgment remedy ("PJR") to secure recovery of the judgment. *Id.,* Doc. # 75–77. She also filed motions for preliminary injunction, disclosure of assets, and prejudgment and post judgment interest. *Id.,* Doc. # 77 & 107. In Tucker's memorandum in support

---

1. Journal Register East is a division of the Journal Register Company, which does business as *"The New Haven Register."* Tucker I, Doc. # 1, p. 3 (¶ 9).

2. Tucker was employed by *The New Haven Register,* a daily newspaper owned by Journal Register East, as a Telemarketing Manager from August 21, 2000, until her discharge on October 16, 2003. Tucker I, Doc. # 1, p. 3 (¶¶ 10–11).

3. Tucker further claimed that her opposition to sexual harassment and to providing false testimony to cover such harassment were "on behalf of her many co-employees and implicated a matter of public concern." Tucker I, Doc. # 1, pp. 12–13 (¶ 72). She thus maintained that she was discharged in violation of Conn. Gen.Stat. § 31–51q for exercising her freedom of speech. *Id.,* p. 13 (¶ 73).

of a PJR, her counsel noted that "[w]hile there are limitations on the amount of punitive damages under Title VII, the likely final judgment . . . remains substantial." *Id.*, Doc. # 76, p. 4, para. 1.[4]

Defendant Journal Register East opposed plaintiff's post-trial motions and also filed, *inter alia*, motions to stay execution of the judgment and for a new trial.[5] *Id.*, Doc. # 83 & 89.

On February 20, 2009, Judge Underhill issued a ruling, granting Tucker's motion for a PJR in the amount of $500,000 and her motion for disclosure of assets to satisfy the PJR. *Id.*, Doc. # 129. He specifically found that probable cause existed that a judgment of $500,000 would ultimately be entered for Tucker and that the defendant was not adequately secured by insurance. Judge Underhill, however, denied Tucker's motion to preliminarily enjoin the defendant from disposing of its assets, finding that Tucker had failed to show the existence of "irreparable harm" if the injunction were not granted. *Id.*

On February 21, 2009, Journal Register East, along with its parent company, the Journal Register Company, filed a voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the Southern District of New York. *In re Journal Register Co., et al.*, No. 09–10769(ALG) (Bankr.S.D.N.Y.2009). An automatic stay pursuant to § 362 of the Bankruptcy Code went into effect.[6] That stay barred the continuation of judicial proceedings against the debtor and its affiliated debtors to recover claims that arose prior to the bankruptcy filing. Tucker was thus barred from pursuing her claims and/or attempting to collect the judgment in Tucker I.

Since March 24, 2009, Tucker I has remained stayed. Judge Underhill denied all pending post-trial motions without prejudice to their renewal "if and when the bankruptcy stay is lifted." *Id.*, Doc. # 129. Defendant's motions for summary judgment or a new trial were thus never decided on their merits. Judge Underhill closed the case, subject to being reopened

---

**4.** The Court notes that the defendants in the case at bar, hereinafter "Tucker II," have interpreted such language and plaintiff's damages calculations in that memorandum as admissions by plaintiff that a *remittitur* is likely in Tucker I. *See, e.g.*, Tucker II, Doc. # 17, p. 2, para. 2 ("[i]n those moving papers, Plaintiff conceded that a *remittitur* was inevitable based on statutory caps on damages which were far exceeded by the verdict as rendered). *See* Tucker I, Doc. # 76, p. 4 (Part A.).

**5.** The defendant also filed motions for summary judgment and an award of attorneys' fees and costs. Tucker I, Doc. # 82 & 86.

**6.** Section 362 of the Bankruptcy Code is captioned "Automatic stay" and states in relevant (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . operates as a stay, applicable to all entities, of— (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other

action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . ." 11 U.S.C. § 362(a)(1). Once in effect and absent relief afforded by a court, "the stay survives until the case is closed or dismissed or the debtor is discharged." Norton Creditors' Rights Handbook § 10:2; *see also* 11 U.S.C. § 362(c)(2)(A)-(C).

In the Second Circuit, as a general rule, any action taken in violation of the automatic stay is void *ab initio* and thus without effect. *See, e.g., Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir.1998) (automatic stay is effective immediately upon filing of bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void).

upon the termination the bankruptcy stay.[7]

### B. Bankruptcy Proceedings—Lifting of the Stay

On March 17, 2009, Tucker made a motion in bankruptcy court for relief from the automatic stay for the purpose of pursuing recovery of the $4 million judgment in Tucker I from Journal Register East's insurer, National Union, up to the limits of Journal Register East's employment practices liability insurance policy ("EPL Policy").[8] On June 4, 2009, the Journal Register Company agreed to the bankruptcy court's lifting of the stay "for the sole purpose of permitting Tucker to pursue the Claims against National Union and the EPL Policy to the limits of the EPL Policy." *See In Re Journal Register Co., et al,* No. 09–10769(ALG), Stipulation for Relief from Stay, p. 3 (¶ 1). The Stipulation, however, left "all [other] protections afforded to the Debtors by section 362 of the Bankruptcy Code ... in full force and effect." *Id.*

Bankruptcy Judge Allan L. Gropper approved the Stipulation on June 22, 2009. In his Memorandum, he noted that "[t]he only question [in lifting the stay] is whether there should also be leave, at this time, [for the insurer] to proceed with the motion for a new trial and judgment n.o.v. [in Tucker I]. *Id.,* Memorandum of Judge Allan Gropper (June 22, 2009), pp. 2–3. He concluded as follows:

> "[T]he motion for a new trial and judgment *n.o.v.* may have to be decided by the District Court. However, the Insurer has not established on this record than an insurer that has disclaimed coverage can force the insured to seek to overturn a verdict before the issue of coverage has been determined. **It does not appear to be unfair** to permit the parties, who have agreed to limited relief, **to proceed first on the insurance coverage issue,** and the Insurer has not argued that this would affect the availability of coverage. The stay does not ordinarily protect third parties, in any event.... Accordingly, the Stipulation is approved, without prejudice to the Insurer's right to move for further relief from the stay [*i.e.,* to seek a new trial or judgment *n.o.v.* in Tucker I]."

*Id.,* p. 3 (emphasis added).[9]

### C. Tucker II

In these circumstances, in December 2009 plaintiff filed the captioned action,

---

7. On July 29, 2008, the case was administratively closed. However, Judge Underhill issued an additional ruling on September 2, 2009, clarifying the status of the case as statistically closed, "stayed pending bankruptcy," and denied all pending motions without prejudice to renewal upon the lifting of the stay. Tucker I, Doc. # 129.

8. At the time of Tucker's alleged retaliatory termination by Journal Register East, its parent company, Journal Register Company, maintained an employment practices liability insurance policy (# 729–15–02) with National Union. National Union, however, denies that the EPL Policy, or any other National Union insurance policy, provided coverage for Tucker's claims. *See In Re Journal Register Co., et al,* No. 09–10769(ALG), Stipulation for Relief from Stay, p. 3, para. 1.

9. On July 7, 2009, Bankruptcy Judge Gropper entered an Order confirming the Amended Joint Chapter 11 Plan of Reorganization ("Confirmation Order") for the Journal Register Company and its affiliated debtors. That Order discharged the Journal Register Company from liability for all pre-existing debts listed in the Confirmation Order. Journal Register East, a subsidiary and affiliated debtor, thus has no incentive, or arguably standing, to move to reopen Tucker I for the purpose of renewing its post-trial motions (*i.e.,* to challenge the $4 million verdict). Moreover, as described *supra,* Judge Gropper's approval to lift the bankruptcy stay did not encompass that purpose.

Tucker II, against insurers National Union and AIG as the underwriters of the $5 million insurance policy with the Journal Register Company (*i.e.*, the EPL Policy) that she contends covered the $4 million judgment in her jury trial in Tucker I.[10] In this action, she seeks compensatory and punitive damages "caused by the defendant insurers' failure to satisfy" the $4 million judgment in her favor and "against their insured, Journal Register Company."[11] Tucker II, Doc. # 1, p. 1(¶ 1). Having obtained such a judgment, Tucker contends that she is a "subrogee and intended third party beneficiary under the policy ... who possesses contractual and statutory rights to take legal action directly against the defendants to satisfy her judgment." *Id.*

In her Complaint, Tucker has included the following claims: breach of contract; breach of the implied covenant of good faith and fair dealing; a claim to recover as a subrogee of the Journal Register Company under Connecticut's Direct Action Statute, Conn. Gen.Stat. § 38a–321;[12] violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a, *et seq.;* tort of bad faith (in handling Tucker's claim and denying coverage); and equitable estoppel (to prevent defendants "from attempting to assume the defense of Tucker's claim to attack or reduce the amount of Tucker's judgment").[13]

## II. *ISSUE*

The defendants base their current motion to transfer and/or reassign the case to Judge Underhill on two legal theories: (1) Tucker II is "related" to Tucker I for purposes of the first-to-file rule, as set

---

10. Tucker claims that National Union is a subsidiary of AIG, "a holding company which through its subsidiaries, is engaged in a broad range of insurance and insurance-related activities in the United States and abroad." Tucker II, Doc. # 1, p. 3 (¶ 6).

11. Tucker has alleged that AIG denied coverage of her claims set forth in Tucker I in a letter dated August 18, 2008. Tucker II, Doc. # 1, p. 8 (¶¶ 39–40) In that letter, AIG referenced a notice provision of the policy (contained in Clause 8) to conclude that no coverage existed where Journal Register had failed to advise it of Tucker's litigation until after Journal Register received an adverse jury verdict. *Id.* (¶ 40).

12. Conn. Gen.Stat. § 38a–321, captioned, "Liability of insurer under liability policy," states in relevant part:

Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty.... **Upon the recovery of a final judgment** against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose **and if such judgment is not satisfied within thirty days** after the date when it was rendered, **such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer** to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.
(Emphasis added).

13. Tucker claims that the defendants should not be allowed to attack the judgment in Tucker I because they were not parties to that proceeding and thus have no legal standing to intervene on behalf of Journal East, "especially having disclaimed coverage in August 2008." Tucker II, Doc. # 1, p. 11 (¶ 115).

forth in Local Rule of Civil Procedure 40(b) of this District and the precedent of the Second Circuit; and (2) "the interest of justice" warrants a discretionary transfer under 28 U.S.C. § 1404. The Court must therefore examine each argument in turn to determine whether transfer would be proper under the facts and circumstances of this case.

## III. DISCUSSION

### A. First–to–File Rule

Defendants first contend that a transfer of the case at bar to Judge Underhill is proper under Local R. Civ. P. 40(b), which states that if there is a related case pending in the District when a new case is filed, the new case should "normally be assigned to the Judge having the earliest filed case." [14] Defendants maintain that this rule is "analogous to the general rule followed in this District ... known as the 'first-to-file' rule" as set forth in *Veritas–Scalable Investment Products Fund, LLC v. FB Foods, Inc.*, No. 3:04–CV–1199 (JBA), 2006 WL 2520262, at *4 (D.Conn. July 26, 2006) ("[w]here lawsuits concerning the same parties and issues are pending in two federal districts, the first filed rule of the Second Circuit generally affords priority to the first-filed suit") (inter-

nal citation omitted). *See* Tucker II, Doc. # 17, p. 4, para. 1.

In support of their motion, defendants note that, when filing the present action, "Plaintiff correctly identified the Underlying Lawsuit as a related proceeding in her Civil Cover Sheet." *Id.*, p. 2, para. 2.[15] Moreover, they urge that there is a common issue in both proceedings, namely, the "amount of damages justified by the evidence and enforceable against National Union's insured, Journal Register." *Id.*, p. 5, para. 2.

Defendants are correct in stating that, as a general rule, the Second Circuit follows the first-to-file rule. *See Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 274–75 (2d Cir.2008) ("[w]here there are two competing lawsuits, the first suit should have priority").[16] District courts must thus show deference to the first filing because such deference "embodies considerations of judicial administration and conservation of resources." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989). "[W]hen a district court encounters a duplicative suit, it should dismiss, stay, or transfer that suit to the jurisdiction of the first-filed suit, absent a finding of special circumstances or a balance of convenience

14. Local R. Civ. P. 40(b)(1) states in its entirety:

> (b) Individual Calendar System.
> (1) All cases will be assigned to a single Judge from filing to termination. In the event that it is subsequently determined that there is pending in this District a related case, or, if one is later filed, such case should normally be assigned to the Judge having the earliest filed case. A case may be reassigned at the discretion of the Chief Judge.

15. Plaintiff claims that defendants are attempting to elevate "form over substance" by claiming that the cases are related. *See* Tucker II, Doc. # 20, p. 2, para. 3. She has now

offered to file an amended civil cover sheet, maintaining that the cases are only "related" in the broad sense (*i.e.*, that she is the plaintiff in both actions) and not for the purposes of the "first-filed" rule. *Id.*, p. 2, para. 4 to p. 3, para. 1. She thus opposes any transfer.

16. *Accord Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.*, No. 3:09–CV212 (AWT), 2010 WL 174078, at *13 (D.Conn. Jan. 14, 2010); *see also 800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 131 (S.D.N.Y.1994) ("Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first filed' rule whereby the court which first has possession of the action decides it.").

favoring the second suit." *Hilb Rogal & Hobbs Co. v. MacGinnitie,* No. 3:04–CV–1541 (JCH), 2005 WL 441509, at *4 (D.Conn. Feb. 14, 2005).[17]

■ In order to decide whether to apply the first-to-file rule, the court must ask the threshold question of "are the actions duplicative." *Alden Corp. v. Eazypower Corp.,* 294 F.Supp.2d 233, 236 (D.Conn. 2003). Claims are considered duplicative if they arise from the same nucleus of facts.[18] *Id.* at 236. If they are duplicative, the court must consider the convenience to the parties in the event of transfer and any special circumstances favoring the second-filed suit.[19] If these considerations do not prevail, the court must then follow the first-to-file rule. *Simmons,* 878 F.2d at 79.

### 1. *Tucker I is no longer pending*

■ The case at bar does not fit squarely within the first-to-file rule as stated in Local Rule 40(b) or as described in the common law of this Circuit. First of all,

Tucker I, the allegedly related case, is not technically pending at this time. It is in fact closed. Granted, Judge Underhill closed it subject to reopening upon the termination of the bankruptcy proceedings. Where, however, Journal Register East's pre-bankruptcy debts have been discharged under the Confirmation Order, it is unlikely that it would—or even could—move to reopen the case and renew its motions.[20]

Furthermore, Bankruptcy Judge Gropper made it very clear that he did not lift the stay to allow the insurers to attack the jury verdict in Tucker I at this time. He left that possibility open in the future upon a motion to further lift the stay, but narrowly lifted the stay "for the sole purpose of permitting Tucker to pursue the Claims against National Union and the EPL Policy to the limits of the EPL Policy." *In re Journal Register Company, et al.,* Memorandum of Judge Allan Gropper (June 22, 2009), pp. 2–3. Judge Gropper thus approved the Stipulation to lift the stay

---

17. *See also Employers, Ins. of Wausau v. Fox Entm't Group, Inc.,* 522 F.3d 271, 275 (2d Cir.2008) (specifying that the two exceptions to the first-filed rule are: (1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit); *accord Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd.,* No. 3:09–CV–212 (AWT), 2010 WL 174078, at *13 (D.Conn. Jan. 14, 2010); *Roller Bearing Co. of America v. American Software,* 570 F.Supp.2d 376, 387 (D.Conn. 2008).

18. When deciding whether two suits are duplicative for purposes of the first-filed rule, the court "must be careful ... not to be swayed by a rough resemblance between the two suits without assuring itself that ... the claims asserted in both suits are also the same." *Aaron v. Mattikow,* 225 F.R.D. 407, 415 (E.D.N.Y.2004).

19. To determine whether the balance of convenience merits departure from the first-filed

rule, a court must apply the same factors used to decide whether a discretionary transfer under 28 U.S.C. § 1404(a) is appropriate. *Veritas–Scalable Investment Products Fund, LLC,* 2006 WL 2520262, at *4 n. 12. *See also Cummings & Lockwood, P.C. v. Simses,* No. 3:01–CV–422 (PCD), 2001 WL 789313, at *6 (D.Conn. July 5, 2001); *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994). The balancing of the factors is then left to the discretion of the court. *William Gluckin & Co. v. Int'l Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969). For a complete list of those factors and discussion, *see* Part III. B., *infra.*

20. Although the automatic stay expired with the entry of the Confirmation Order on July 7, 2009, a permanent discharge injunction replaced it. That injunction bars the commencement or continuation of all actions or proceedings on any listed pre-bankruptcy claim or equity interest against the debtor and its affiliated debtors (in this case, the Journal East Company).

"without prejudice to the Insurer's right to move for further relief from the stay." *Id.*

In the event that the insurers do go back to bankruptcy court and specifically request to reopen the bankruptcy proceedings to seek permission to step into the insured's shoes and challenge the verdict in Tucker I, the case may be reopened. At that point, there would arguably be related cases **pending.** However, Bankruptcy Judge Gropper clarified that he was disinclined to allow the insurers to challenge the verdict amount in Tucker I as long as they continued to disclaim coverage under the EPL Policy. *Id.* Rather, he agreed to lift the stay only to allow the parties to "proceed first on the insurance coverage issue." [21] *Id.*, p. 3, para. 1.

### 2. The issues in Tuckers I and II are not identical or related so the cases are not duplicative

■ When determining whether to apply the first-filed rule, "[t]he first inquiry is whether virtually the same issue or issues are being decided by the same parties in the respective actions." *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v. Lafarge North America, Inc.*, 474 F.Supp.2d 474, 486 (S.D.N.Y. 2007), *aff'd on that ground sub nom. New York Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 112–13 (2d Cir.2010). Where the issues are clearly different, the rule does not apply.

As Judge Nevas of this District noted in *Halo Tech Holdings, Inc. v. Cooper*, No. 3:07–CV–489 (AHN), 2008 WL 877156, at *16 (D.Conn. Mar. 26, 2008), the first-filed rule "has no application" where "the issues involved in the two lawsuits are unrelated." In that case, the first-filed suit was brought by Halo shareholders, alleging fraud by Halo in failing to register shares it received when it purchased a subsidiary, Old Empagio. In the second-filed action, however, Halo's fraud alleged in the first suit was merely a "backstory" to the current action in which Halo was suing its shareholders for breach of their fiduciary duties and unfair trade and business practices in the sale of a different corporation. Because the "two lawsuits involve[d] different factual issues and claims," the court found that a transfer of the second action would not further judicial economy. *See also Pitney Bowes, Inc. v. Ricoh Corp.*, No. 3:03–CV–1985 (RNC), 2004 WL 243351, at *1 (D.Conn. Feb. 7, 2004) (holding actions not duplicative and first-filed rule inapplicable where first lawsuit alleged patent infringement through manufacturing postage metering machines and second lawsuit alleged patent infringement by manufacturing multifunction printers).

As plaintiff points out in her Memorandum in Opposition, the issues to be decided in Tucker I and Tucker II are not the same, but rather "substantially different." [22] *See* Tucker II, Doc. #20, p. 1,

---

21. Plaintiff contests the notion that she may not recover the $4 million judgment in Tucker I from the insurers in the present action. Tucker II, Doc. #29, p. 1, para. 2 ("Contrary to Defendant's representations, the bankruptcy court expressly authorized Tucker to pursue her claims against the defendants under the policy, and not merely to "establish coverage."). Plaintiff notes that the bankruptcy stay has "long since lifted" and disregards Judge Gropper's express ruling that the stay was lifted "to proceed first on the insurance coverage ... without prejudice to the

Insurer's right to move for further relief from the stay." *Id.*, Doc. #29–4, p. 3, para. 1–2. Furthermore, she focuses on the expiration of the automatic stay without recognizing that, under bankruptcy law, a permanent discharge injunction goes into effect upon the effective date of the Confirmation Order and thereby effectively replaces the automatic stay.

22. Plaintiff relies on Judge Margolis's language in *Veritas–Scalable* to warn that "the deciding court must be careful ... not to be swayed by a rough resemblance between the

para. 2 (asserting that Tucker I "was an employment action" and Tucker II is "an insurance coverage action"). In Tucker I, the remaining issue to be decided is whether the defendant Journal Register East should be granted a new trial and/or whether there should be a *remittitur* to reduce the jury verdict as excessive. This issue is not before the Court in Tucker II.

In Tucker II, the central issue is whether defendants' EPL Policy with the Journal Register Company covers the damages resulting from plaintiff's allegedly wrongful termination in Tucker I. The Court will thus be required to determine whether there was an effective EPL Policy with the Journal Register Company; what the terms of that policy were; whether that policy covers damages to Journal Register East's employees, as described in the Complaint in Tucker I; and if so, to what extent plaintiff's damages were covered.[23]

If one examines and compares the claims set forth in the two Complaints, one notes that the causes of action in Tucker I and II are not duplicative. As stated *supra,* in Tucker I plaintiff brought actions for unlawful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* violation of the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60, *et seq.;* and

violation of Connecticut's "Free Speech Law," Conn. Gen.Stat. § 31–51q. In contrast, in Tucker II, plaintiff now sues her former employer's alleged insurers for breach of contract; breach of the implied covenant of good faith and fair dealing; damages as a subrogee of the Journal Register Company under Connecticut's Direct Action Statute, Conn. Gen.Stat. § 38a–321; violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a, *et seq.;* bad faith; and equitable estoppel. Therefore the cases are not duplicative.[24]

Pointing to precedent within the Fifth Circuit, defendants argue that the "first to file" rule should apply even where the cases are not identical provided that the same "facts, transactions or issues ... are central to both cases." Tucker II, Doc. # 17, p. 5, para. 1. *See Save Power Ltd. v. Syntek Finance Corp.,* 121 F.3d 947, 950 (5th Cir.1997) (holding that "regardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in ... the jurisdiction first seized of the issues."). The Second Circuit has not enunciated a standard of "substantial overlap" in "first to file" cases; however, were this Court to assume without deciding that "substantial overlap" is the proper stan-

---

two suits without assuring itself that ... the claims asserted in both suits are also the same." Tucker, II, Doc. # 20, p. 3, para. 2 (citing 2006 WL 2520262, at *4 (internal quotations omitted)).

**23.** Upon a finding that sufficient insurance coverage exists to cover $4 million in damages, Tucker II might be stayed pending adjudication of a final verdict amount in Tucker I. At that point, the insurers might then return to bankruptcy court with a request to be allowed to challenge the validity and amount of the jury verdict in Tucker I. If Tucker I were reopened, Judge Underhill could rule on the post-trial motions and Tucker II might then be resolved.

**24.** Defendants concede that the causes of action in the two lawsuits are not identical, but make much of the notion that, according to their own analysis, the claims in Tucker II are "weak" in nature and thus not "properly" before the Court. Tucker II, Doc. # 28, pp. 2–4. In weighing the similarity of two suits, the courts of this Circuit do not assess the merits of the claims in either case to determine whether the actions are the same. Rather, the courts review the pleadings (the causes of action and alleged supporting facts) to determine the nature and similarity of the pending actions.

dard, Tucker I and II do not substantially overlap. They involve discrete issues that must be decided separately with different evidence.[25] They thus do not involve the same facts, transactions, or issues.

Furthermore, even in jurisdictions that apply "substantial overlap" to discretionary transfers, "[w]here the overlap between the suits is less than complete, the judgment is made case by case, based on such factors as the extent of the overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.* (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir.1996)).

In the case at bar, there is no likelihood of a conflict with rulings to be rendered by Judge Underhill. He is barred from proceeding further in Tucker I unless or until the bankruptcy court permits such an action. Moreover, the New Haven and Bridgeport Divisions of this District have no competing interests in resolving the parties' disputes. Thus, any alleged overlap between the cases is insufficient to merit transfer.

### 3. The parties in Tucker I and Tucker II are not the "same"

Just as the issues in Tucker I and II are not identical, neither are the parties the same. The plaintiff is Teri Tucker in both proceedings. However, the defendants in the two actions are different: in Tucker I, the defendant was Journal Register East d/b/a *The New Haven Register,* Tucker's former employer. In Tucker II, the defendants are insurers, National Union and AIG, who allegedly entered into the EPL Policy with the Journal Register Company,

the parent company of Journal Register East.

Courts have declined to apply the first-to-file rule where the parties to the two actions are not identical. *See, e.g., Van Zwinnen v. S.S. "EVER GRAND,"* Nos. 92 Civ. 7142(JFK), 92 Civ. 7609(JFK), 1994 WL 465918, at *3–4 (S.D.N.Y. Aug. 24, 1994) (court rejected "first-to-file" argument to transfer where parties to the actions were "not identical"); *United States v. International Broth. of Teamsters,* 708 F.Supp. 1388, 1403 (S.D.N.Y.1989) (first to file rule held inapposite where "parties in the two cases are different"). *See also In re Cuyahoga Equipment Corp.,* 980 F.2d 110, 116–17 (2d Cir.1992) (first to file rule usually applies when "identical or substantially similar parties" are present in both courts).

### 4. This Court is not the court in which the allegedly first-filed case was brought

For the foregoing reasons, this case does not fit squarely within the parameters of the first-filed rule. However, were this a proper case for the rule's application, "the court in which the first-filed case was brought [is the one that] decides the question of whether ... the first-filed rule, or alternatively, an exception to the first-filed rule, applies." *Ontel Products, Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 n. 9 (S.D.N.Y.1995); *see also Veritas–Scalable Investment Products Fund, LLC,* 2006 WL 2520262, at *4. Thus, had Tucker I truly been a firstfiled case, and were that case still pending, Judge Underhill would be the one to determine the rule's application. Here, both cases were brought in

---

**25.** Plaintiff avers that there will be no "overlapping discovery" in Tucker I and II. Tucker II, Doc. # 27, p. 2, para. 2. In support thereof, she lists the relevant facts in Tucker II that have no relevance to Tucker I: "defendants' processing of the [insurance] claim, closing of

the file, how many claims adjusters were assigned to the claim, communications between the insured and the defendants, the timing of the disclaimer of coverage until an adverse verdict was rendered, etc." *Id.*

the same forum, the District of Connecticut, so that limitation carries little meaning. In any event, I will construe the defendants' motion as one more properly made for discretionary transfer pursuant to 28 U.S.C. § 1404(a).

### B. *Discretionary Transfer Pursuant to 28 U.S.C. § 1404*

Defendants' second stated basis for seeking transfer is 28 U.S.C. § 1404(b), under which they seek an intra-district transfer. Section 1404(b) states in relevant part:

> Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district.

28 U.S.C. § 1404(b). Although they are indeed seeking transfer within the same district, defendants' reliance on subsection (b) is misplaced in that it applies only where "all parties" move, consent or stipulate to the transfer. In the present case, plaintiff adamantly objects to defendants' motion to transfer. There is thus no joint motion, agreement or stipulation to transfer the case to Judge Underhill.

This Court may, however, choose to construe defendants' motion as one for discretionary transfer under section 1404(a). In so doing, a district court may even choose to transfer *sua sponte* in the interest of justice. *See, e.g., Lead Industries Ass'n, Inc. v. Occupational Safety and Health Administration*, 610 F.2d 70, 79 n. 17 (2d Cir.1979) (distinguishing subsection 1404(a) from subsection 1404(b) in that (b) contains a "proviso" and thus "limitation" that there must be a motion, consent or stipulation of all parties for transfer to be proper whereas (a) even permits a court to transfer a case *sua sponte* in the interest

of justice); *accord I–T–E Circuit Breaker Co. v. Becker*, 343 F.2d 361, 363 (8th Cir. 1965).

Section 1404(a), entitled "[c]hange of venue," provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir.1989); *Carson Optical, Inc. v. Telebrands Corp.*, No. 3:06 CV 821(CFD), 2007 WL 2460672 (D.Conn. Aug. 27, 2007). In the case at bar, defendants seek a transfer to a different court within the same district, the District of Connecticut. Venue would thus remain proper for purposes of diversity of citizenship, and, in accordance with plaintiff's Complaint, would remain in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2); Tucker II, Doc. # 1, p. 3 (¶ 3).

A district court's transfer of a case under 28 U.S.C. § 1404(a) is subject to an abuse of discretion standard of review. *Codex Corp. v. Milgo Elect. Corp.*, 553 F.2d 735, 737 (1st Cir.1977) (district court's decision to transfer "will not be overturned except on a very strong showing that the court abused its discretion"), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977). *See also New York Marine*, 599 F.3d at 112 ("We review a district court's denial of a motion to transfer venue for abuse of discretion."); *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) ("[M]otions for transfer lie within the broad discretion of the district court."); *Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir.1966) (motion to transfer pursuant to section 1404(a) subject only to review for "abuse of discretion"); *Levitt v. State of Maryland Depos-*

it Ins. Fund Corp., 643 F.Supp. 1485, 1492 (E.D.N.Y.1986) (decision whether to grant transfer is within the "broad discretion of the court" and "is an interlocutory, nonappealable order").

■ In assessing a motion to transfer pursuant to section 1404(a), the court must make a two-step inquiry. First it must establish that the case could have been brought in the prospective transferee district;[26] and second, it must "determine whether the convenience and the interests of justice favor transfer." *Kwik Goal, Ltd. v. Youth Sports Publishing, Inc.*, No. 06–Civ.–395 (HB), 2006 WL 1517598, at *1 (S.D.N.Y. May 31, 2006).

■ Thus, once the district court decides that venue is proper, it exercises its broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (internal quotations and citation omitted); *In re Cuyahoga Equip. Corp.*, 980 F.2d at 117. "The analysis is a flexible one, because wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *American Steamship Owners*, 474 F.Supp.2d at 480 (internal quotations and citations omitted), *aff'd, New York Marine*, 599 F.3d at 112.

■ Factors to be considered in determining whether a section 1404(a) transfer is warranted include "convenience of the parties and witnesses, availability of process to compel unwilling witnesses to testify, location of the relevant documents, locus of the operative facts, relative means of the parties, the forum's familiarity with governing law, plaintiff's choice of forum, and the interests of justice." *A Slice of Pie Productions, LLC v. Wayans Bros. Entertainment*, 392 F.Supp.2d 297, 305 (D.Conn.2005) (citing *U.S. Surgical Corp. v. Imagyn Medical Techs., Inc.*, 25 F.Supp.2d 40, 46 (D.Conn.1998)); *see also New York Marine*, 599 F.3d at 112 (enumerating factors used to determine whether to grant a motion to transfer venue);[27] *Eisen v. Pulaski Furniture Corp.*, No. 3:05–CV–1440 (RNC), 2006 WL 908446, at *2 (D.Conn. April 4, 2006). *Accord Millennium, L.P. v. Dakota Imaging*, No. 03 Civ. 1838(RWS), 2003 WL 22940488, at *6 (S.D.N.Y. Dec. 15, 2003) (enumerating factors used to determine whether a transfer would serve the interests of convenience and fairness).[28]

---

**26.** Propriety of venue must be examined because section 1404(a) only permits a district court to transfer an action to a district in which the action originally "**might have been brought.**" 28 U.S.C. § 1404(a) (emphasis added).

**27.** Such factors include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir.2006)).

**28.** Such factors include those listed in *New York Marine*, 599 F.3d at 112, and the following additional factors: "the forum's familiarity with the governing law" and "trial efficiency and the interests of justice based on the totality of the circumstances." 2003 WL 22940488 at *6. There is "no rigid formula for balancing theses factors and no single factor is considered determinative." *Fireman's Fund Ins. Co. v. Personal Communications Devices, LLC*, No. 09–CV–1349 (SHS), 2009 WL 1973534, at *3 (S.D.N.Y. July 8, 2009); *accord Veritas–Scalable Investment Products Fund, LLC*, 2006 WL 2520262, at *4 n. 12.

■ The burden is on the movants to demonstrate that transfer is justified under the circumstances. *A Slice of Pie*, 392 F.Supp.2d at 305 (citing *U.S. Surgical Corp.*, 25 F.Supp.2d at 46). *See also Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir.1989); *Cali v. East Coast Aviation Services*, 178 F.Supp.2d 276, 282 (E.D.N.Y. 2001); *Citigroup, Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 561 (S.D.N.Y.2000). Recently, the Second Circuit in *New York Marine*, 599 F.3d at 114, clarified that "[i]t is therefore appropriate that the district courts in our Circuit have consistently applied the **clear and convincing evidence standard** in determining whether to exercise discretion to grant a transfer motion." (emphasis added) (citing cases).

■ "Absent a clear and convincing showing that the balance of convenience strongly favors the alternate forum ... discretionary transfers are not favored." *Li v. Hock*, 371 Fed.Appx. 171, 175 (2d Cir.2010) (quoting *Ayers v. Arabian American Oil Co.*, 571 F.Supp. 707, 709 (S.D.N.Y.1983)). *See also Super Hoof, Inc. v. Blancato*, No. 85 Civ. 1371(RLC), 1985 WL 3393, at *1 (S.D.N.Y. Oct. 23, 1985) ("absent convincing indications establishing the alternate forum as the more convenient one, discretionary transfers are not favored").

■ In the case at bar, as a preliminary matter, the parties do not dispute the propriety of venue in either the Bridgeport or New Haven Divisions of this District. *See, e.g.,* Tucker II, Doc. #1, p. 3 (¶ 2)("Jurisdiction"). Specifically, Tucker II could have been brought in the Bridgeport Division because the District of Connecticut is comprised of three separate divisions and venue is proper in all if proper in any one.[29]

Similarly, the factors in this case regarding convenience (*e.g.,* convenience of the parties, location of documents, availability of witnesses, familiarity with the law) favor neither side and are thus nondeterminative.[30] Because the case would remain in the same district upon transfer, these factors, although perhaps minimally different, remain essentially the same.[31] Either forum is equally convenient to the parties and would result in the same law being applied[32]. As the court described in

29. Cases filed in the District of Connecticut are randomly assigned to the three divisions of Hartford, New Haven and Bridgeport. Neither plaintiff nor the defendants can therefore claim improper venue in Bridgeport where they have both asserted that Connecticut is the proper venue and the case could have been assigned to any one of the three locations.

30. Courts within this Circuit have held that "[u]nder the transfer of venue procedure in Section 1404(a), the most significant factor to be considered" by the court in its exercise of discretion is the "convenience of the party and nonparty witnesses." *Friedland v. Holiday Inns, Inc.*, No. 88 Civ. 7857(PKL), 1989 WL 101942, at *1 (S.D.N.Y. Aug. 30, 1989). Defendants in this case, however, have presented no argument regarding the convenience of witnesses. Courts have required that when a motion to transfer is made on the

basis of witness convenience, that party "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *American Steamship Owners Mut. Protection and Indem. Ass'n, Inc.*, 474 F.Supp.2d at 482, *aff'd*, 599 F.3d 102 (2d Cir.2010).

31. The United States Courthouse in Bridgeport is only approximately 19.74 miles away from its counterpart in New Haven. Such a distance imposes no undue hardship on the parties and is not, in any event, cited by defendants as a ground for transfer.

32. Ordinarily, a plaintiff's choice of forum is afforded "great weight" by a court when considering whether to grant a discretionary transfer. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir.2006); *Roller Bearing Co. of America*, 570 F.Supp.2d at 389. However,

*White v. ABCO Engineering Corp.,* 199 F.3d 140, 144 (3d Cir.1999), to move a case intra-district is like "moving a card table within a house from the living room to the kitchen" whereas to move to another district is "like collecting all the chips and going to the neighbor's house to play. The house rules, as any gamesperson knows, are usually different." In other words, the proposed intra-district transfer would merely result in a change of courtrooms rather than an increase or decrease in convenience or a change of law.

The main factor upon which defendants argue for transfer is judicial economy in the "interest of justice." Specifically, they claim that both this Court and Judge Underhill will have to decide "the [same] issue of the amount of damages justified by the evidence and enforceable against National Union's insured, Journal Register." Tucker II, Doc. # 17, p. 5, para. 2. They further contend that this could result in "either redundant or inconsistent rulings." *Id.* That argument, however, is flawed.

There will be no inconsistent or conflicting rulings in Tucker I and II. Judge Underhill may not decide the issue of damages in Tucker I at this time because the permanent injunction following the entry of Bankruptcy Judge Gropper's Confirmation Order remains in effect. Thus, unless or until that injunction is lifted, all proceedings in Tucker I are barred.

Were Tucker II to be transferred to Judge Underhill at this time, he might have a slight advantage in already possessing familiarity with the backstory in Tucker I (*i.e.,* the underlying facts regarding the employment discharge). That knowledge would not, however, assist him in determining the key issues in Tucker II—

the existence and extent of insurance coverage under the EPL Policy. There would thus be a minimal at best gain in judicial efficiency if Judge Underhill received Tucker II.

In sum, weighing all of the factors in light of the totality of the circumstances, transfer is not favored. The majority of relevant factors are neutral. The defendants have failed to make the requisite showing, by clear and convincing evidence, to justify transfer.

The Second Circuit's decision in *New York Marine,* 599 F.3d 102, is instructive on both issues discussed *supra.* The case arose out of Hurricane Katrina. A cement company operating a wharfing facility on the Mississippi River was sued in the Eastern District of Louisiana by New Orleans residents who alleged that a barge which broke loose from the wharf during the storm breached a levee and flooded part of the city. Insurers who issued policies of marine insurance to the company brought an action in the Southern District of New York for a declaration that the policy did not indemnify the insured against such claims. The insured made a motion in the New York court to transfer the insurer's action to Louisiana, relying upon both the first-filed rule and 28 U.S.C. § 1404(a). The district court rejected both grounds and denied a transfer. The Second Circuit affirmed, stating that "the first-filed rule is only a presumption that may be rebutted by proof of desirability of proceeding in the forum of the second-filed action," and "[w]ith respect to Lafarge's claim of duplicative litigation, the district court reasonably determined that the liability and coverage issues in the Louisiana and New York actions, respectively, are

here the plaintiff chose the District of Connecticut in which to file her complaint in Tucker II without knowing to which of the three divisions her case would be assigned.

Therefore, her choice of forum is a nullity as a consideration in that her choice remains intact regardless of the outcome on the transfer motion.

not coextensive because resolution of the liability issues would not necessarily resolve Lafarge's claim against the American Club for defense costs." 599 F.3d at 113. That reasoning applies to the case at bar, where issues of coverage predominate in the second-filed action. As for a transfer under § 1404(a), as noted *supra* the Second Circuit held that the moving party must justify a transfer by clear and convincing evidence, and concluded that the insured had not done so. Neither have the defendants in this case.

## IV. *CONCLUSION*

After carefully reviewing defendant's arguments to transfer in light of *New York Marine,* the Court hereby denies defendants' motion to transfer Tucker II to Judge Underhill.[33] First, the first-to-file rule is inapposite. Tucker I is currently closed (*i.e.,* not "pending"); and the issues presented in Tucker I and II are not identical, do not substantially overlap, and thus do not arise from the same nucleus of facts. Moreover, the parties are not the same in the two actions since the defendant in Tucker I is plaintiff's former employer and defendants in Tucker II are alleged insurers of that employer. In sum, the cases are not duplicative.

Second, weighing the requisite factors to determine "the interest of justice" in this case, the scale does not tip in favor of discretionary transfer under 28 U.S.C. § 1404. Transfer within the district is not appropriate under subsection (b) because all parties have not moved, consented or stipulated to the transfer. Furthermore, a discretionary transfer under subsection (a) is not justified because the case would still remain within the District of Connecticut, rendering the normal factors considered on such a transfer motion moot. The convenience of the parties and the witnesses, location of the operative facts, relative ease of access to sources of proof, and the forum's familiarity with the governing law would all remain essentially constant.

Lastly, there is no need to prevent duplication of judicial effort. Tucker I is stayed and closed, subject only to being reopened with the permission of the bankruptcy court. Bankruptcy Judge Gropper made it clear in his Memorandum approving the Stipulation For Relief From Stay that the bankruptcy court is unlikely to grant the insurers leave to reopen Tucker I as long as they continue to disclaim coverage for the plaintiff's damages in that case.

Moreover, even if Tucker I is eventually reopened, it will focus on the issues of whether plaintiff's former employer, Journal Register East, should be granted a new trial and/or whether there should be a *remittitur* to reduce the jury verdict as excessive. The Court in Tucker II now must focus on the issues regarding insurance coverage under the EPL Policy. Therefore, any advantage Judge Underhill might gain in already knowing the backstory in Tucker I (*i.e.,* the underlying facts regarding employment termination in Tucker I) would not assist him in determining the key issues in Tucker II (*i.e.,* the existence and extent of insurance coverage under the EPL Policy).

Examining the relevant considerations of convenience, fairness, and judicial economy, I conclude that the interest of justice does not require transfer of this case. Defendants have failed to establish by clear and convincing evidence that transfer is warranted. For all of the foregoing rea-

---

33. In light of its denial of defendants' motion to transfer, the Court clarifies that it will decide defendants' pending Motion to Dismiss (Doc. # 18). That motion is *sub judice* at this time.

sons, Defendants' Motion to Transfer And/Or For Reassignment (Doct. # 17) is DENIED.

It is SO ORDERED.